**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JOHN LUGO,                                     )
                                               )
          Plaintiff,                           )
                                               )
     v.                                        )          No. 15 C 03769
                                               )
INTERNATIONAL BROTHERHOOD                      )          Judge John J. Tharp, Jr.
OF ELECTRICAL WORKERS LOCAL                    )
#134, EDWIN D. HILL, LONNIE R.                 )
STEPHENSON, INTERNATIONAL                      )
BROTHERHOOD OF ELECTRICAL                      )
WORKERS LOCAL #538, MTS                        )
TITAN ELECTRIC, LLC, and                       )
INDUSTRIAL CONTRACTORS,                        )
SKANSKA, INC.                                  )
                                               )
          Defendants.                          )

**MEMORANDUM OPINION AND ORDER**

Pro se plaintiff John Lugo[1] brings suit against the defendants International Brotherhood

of Electrical Workers Local #134 ("Local #134"), Edwin D. Hill, Lonnie R. Stephenson,

International Brotherhood of Electrical Workers Local #538 ("Local #538"), MTS Titan Electric,

LLC ("Titan"), and Industrial Contractors, Skanska, Inc. ("Skanska"), alleging racial

discrimination and retaliation, in violation of Title VII of the Civil Rights Act, 42 U.S.C.

---

[1] Defendant Skanska raises concern regarding the continued accuracy of Lugo's pro se status, suggesting that his brief in response to Skanska's motion to dismiss the original complaint may have been ghostwritten in view of the language, legal citation, and quality of his argument. *See* Skanska Mem. in Supp. 6 n.2, ECF No. 34. In responding to the motions to dismiss the original complaint, Lugo made lucid legal arguments and properly cited a number of cases. *See, e.g.*, Resp. to Skanska Mt. Dismiss, ECF No. 29. While Lugo's response is more akin to a motion authored by an attorney than most pro se litigants present, the citations are, for a large part, to Ninth Circuit precedent and prior to 1990. *See id*. 3-4. Thus, it seems likely that Lugo has extracted his arguments from other briefs rather than having them ghostwritten by counsel. The Court is satisfied that Lugo is continuing to proceed pro se but reminds Lugo of his continuing duty of candor to the court. *See* Fed. R. Civ. P. 11. Any attorney who provides substantial assistance to a putatively pro se litigant is required to enter an appearance in the case.

§ 2000e–2, and 42 U.S.C. § 1981.[2] The defendants have moved to dismiss. *See* Mts. Dismiss, ECF Nos. 32, 35, 39, 42, 46. For the following reasons, the motions to dismiss are granted in part and denied in part.

## BACKGROUND[3]

John Lugo is a 51-year-old Hispanic male. First Am. Compl. ("FAC") ¶ 1. He was a member of the International Brotherhood of Electrical Workers from January 2003 through June 2007. FAC ¶ 8. Lugo contacted Local #134 in March 2012 to reapply for union membership. FAC ¶ 13. He was initiated as a new member of Local #134 on November 26, 2013. FAC ¶ 9. So far as the record reflects, Lugo was never a member of Local #538.

After requesting to rejoin the Local #134, Lugo's credential as a Journeyman Electrician "was removed" on August 25, 2012. FAC ¶ 14. On August 27, 2012, while working at Freeman Electrical Contractors, the Local #134 job steward, Patrick Duffy, sent Lugo home because he was not a union member. FAC ¶ 15.[4] Lugo states that at the time he was employed at Freeman Electrical, he was a "Group One Member," the designation IBEW gives to the most experienced electricians who have more than four years of work experience. FAC ¶ 16. After dismissing Lugo from Freeman Electrical, Local #134 filled Lugo's position with "lesser experienced,

---

[2] In the EEOC charge underlying this action, Lugo claimed discrimination based on his race, American Indian, and national origin, Hispanic. *See* First Am. Compl. Ex. B, ECF No. 27. His complaint claims discrimination based on his race and national origin (as well as color), which he describes as "Hispanic." *See id.* ¶¶ 1, 35. The Seventh Circuit has identified "Hispanic" as a race with respect to discrimination claims under Title VII and § 1981. *See Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 545 (7th Cir. 2011); *Nelson v. Realty Consulting Servs., Inc.*, 431 F. App'x 502, 506 (7th Cir. 2011). Thus, the Court will treat Lugo's claims of discrimination based his "Hispanic" identity as race discrimination claims.

[3] As this is a motion to dismiss, the Court accepts all well-pleaded facts as true and construes all inferences in favor of the plaintiff. *Zemeckis v. Global Credit & Collection Corp.,* 679 F.3d 632, 634 (7th Cir. 2012).

[4] Neither Lugo's complaint nor his response brief explain the basis or scope of the authority exercised by a union supervisor over a non-union worker on this job site or any other.

Caucasian 'Group Three Members,'" who had fewer than six months of work experience. FAC ¶ 17.

In March 2013, Lugo had a contract with Neutron Electric to complete electrical work at the B.P. Oil Refinery in Whiting, Indiana. FAC ¶ 18. Lugo claims that, throughout this employment, he routinely experienced harassment by caucasian union members (the FAC does not specify to which union the alleged harassers belonged, but it is reasonable to infer from context that they were members of Local #134), such as threats of physical assault and demeaning gestures, *i.e.* spitting near him. FAC ¶¶ 19-20. On March 16, 2013, Lugo learned of postings about him on the Local #134 members-only Facebook page; for example, Local #134 union job steward Mike Supilowski posted, in reference to Lugo, "Needs to have his teeth kicked in." FAC ¶ 21, Ex. A. On May 10, 2013, while still employed with Neutron Electric at the B.P. Refinery, Lugo discovered a hangman's noose in his tool bag. FAC ¶ 22. Lugo learned that other minority employees had experienced similar incidents finding a hangman's noose in or near their tool bags at the B.P. Refinery. FAC ¶ 23.

On November 15, 2013, Lugo filed a charge of discrimination against Local #134 with the Illinois Department of Human Rights ("IDHR"). FAC Ex. B. The charge explained that, after requesting an application for union membership, Lugo had been denied the opportunity to become a union member and had been "classified in a manner that will cause loss of employment and create[ ] a hostile work environment." *Id*. Lugo stated that he had been discriminated against because of his race, American Indian, and national origin, Hispanic. *Id*. On November 25, 2013, Local #134 union official Diane Gartland refused to allow Lugo to sign the "out of work book" designated for electricians seeking work. FAC ¶ 25. Lugo's application for Local #134 union

membership was approved the next day, on November 26, 2013. Lugo alleges, however, that he experienced "continued retaliation" for filing the EEOC charge. FAC ¶ 26.

Nearly a year later, in October 2014, while Lugo was employed by Skanska, he again became aware of Facebook postings by Local #134 members: Jim Thomas posted, "John Lugo citing [sic]," and Ron Sonne posted, "Does he have a target on his back?" FAC ¶ 27, Ex. C. On October 21, 2014, Skanska project manager Brent Dierlam informed Lugo that he was being "let go because of a reduction in workforce." FAC ¶ 28. Later that day, Skanska contacted Local #538 to request 15 additional electricians for the job site from which Lugo had just been let go. FAC ¶ 28. On October 22, 2014, Lugo contacted Local #538 official Jim Baily to confirm that Lugo was eligible to return to Skanska Electric as one of the group of 15 newly requested electricians; Baily informed Lugo that Skanska denied Lugo employment for unknown reasons. FAC ¶ 29.

From November 15, 2014 through December 24, 2014, Lugo worked for Titan Electric but was laid off on December 24 by Titan project manager Ken Kovach as part of a "one man layoff, reduction in workforce." FAC ¶ 30.

On January 30, 2015, the Equal Employment Opportunity Commission ("EEOC") issued a notice of right-to-sue, based on the November 15, 2013 charge against Local #134. FAC Ex. E. Lugo filed this lawsuit on April 29, 2015 against Locals #134 and #538, Skanska, Titan, Hill, and Stephenson, alleging racial discrimination and retaliation. *See* Compl., ECF No. 1. In response to motions to dismiss by defendants Skanska, Hill, Stephenson, and Local #538, Lugo filed the First Amended Complaint. *See* Mts. Dismiss, ECF Nos. 10, 15, 19. The defendants now move to dismiss that complaint.

**DISCUSSION**

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Adams*, 742 F.3d at 728 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although notice pleading under Rule 8 is a more permissible standard than the code pleading that preceded it, "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. A court must accept all of the plaintiff's factual allegations as true when reviewing the complaint, but conclusory allegations merely restating the elements of a cause of action do not receive this presumption: "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "A complaint must allege facts to support a cause of action's basic elements; the plaintiff is required to do at least that much." *Adams*, 742 F.3d at 728.

I.      **Defendant Hill**

Defendant Edwin Hill, a former President of the IBEW International, moves to dismiss the claims against him under 12(b)(5), contesting the adequacy of service of process: the docket reflects summons returned executed as to Hill on May 15, 2015. *See* Hill Aff. Serv., ECF No. 22. The affidavit of service, however, states that when the process server first attempted service on Hill at the IBEW International office in Washington, D.C., IBEW General Counsel Richard Resnick "assured me he cannot accept documents on [Hill's] behalf." *Id.* The process server again attempted to serve Hill via Resnick at the IBEW International office: "*Successful attempt*:

. . . Resnick refused to accept the documents even after he was told they were for IBEW. They were dropped at his feet." *Id.* (emphasis added).

"When a defendant challenges the sufficiency or service, the burden is on the plaintiff to make a prima facie showing that service was proper." *Julin v. Advanced Equities, Inc.*, No. 13 C 9075, 2014 WL 5617001, at *5 (N.D. Ill. Nov. 4, 2014). Federal Rule of Civil Procedure 4(e) permits service on an individual by personal service of the summons and complaint, leaving a copy of each at the individual's abode with a resident of suitable age and discretion, delivering a copy of each to the individual's legally authorized agent, or by any other method permitted under state law where the individual is served. The rule for service in Washington, D.C, where Lugo attempted to serve Hill, mirrors the federal rule. *See* D.C. Sup. Ct. R. Civ. P. 4(e)(2) (permitting personal service, abode service, or service on a legally authorized agent).

Hill argues that service was improper because Resnick is not Hill's legally authorized agent, and Resnick advised the process server as much both times he attempted service. *See* Resnick Decl. ¶¶ 4-6, ECF No. 36-2 (Resnick's uncontested declaration affirming that he informed the process server that he is not legally authorized to accept service on Hill's behalf). The process server's affidavit of service confirms that Resnick advised him that Resnick was not authorized to accept service on Hill's behalf. *See* Hill Aff. Serv. Thus, Lugo has not met his burden of establishing that he served Hill via any of the methods set forth under the Federal Rules or the D.C. Rules of Procedure. While Lugo's argument that he still has time to properly serve Hill was true on August 10, 2015, when he filed his response, *see* Resp. to Hill 5-6, ECF

No. 60, the 120-day window for service under Rule 4(m) has elapsed and, to date, there is no evidence that Lugo has properly served Hill.[5]

Because Hill has not been properly served, his Rule 12(b)(5) motion to dismiss is granted and all claims against Hill are dismissed with prejudice.[6]

## II. Title VII Claims

Lugo alleges that the defendants discriminated against him on the basis of his race and that he was retaliated against for filing the November 15, 2013 charge against Local #134 with the EEOC, in violation of Title VII. Title VII states that "'[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Hall v. City of Chicago*, 713 F.3d 325, 329-30 (7th Cir. 2013) (quoting 42 U.S.C. § 2000e–2(a)(1)). With respect to unions, the statute provides that unlawful employment practices include, as relevant here, excluding from membership, classifying for employment, and causing an employer to discriminate, on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(c).

### A. Defendant Stephenson

The Title VII claims against Stephenson, another former IBEW President (and had Hill been served, against him as well) must be dismissed because Title VII does not provide for individual liability: "One key difference between § 1981 and Title VII is that the latter authorizes suit only against the employer as an entity rather than against individual people who are agents

---

[5] Although Rule 4(m) now limits the window for service to 90 days after the complaint is filed, the rule in effect at the time Lugo filed the First Amended Complaint permitted 120 days for service. *See* Fed. R. Civ. P. 4(m), Adv. Comm. N. 2015 Amend.

[6] The FAC is dismissed with prejudice against Hill because: the time for service has long passed; in any event, he cannot be sued under Title VII because he's an individual (see discussion *supra*); and the FAC lacks any factual allegations against Hill whatsoever.

of the employer." *Smith v. Bray*, 681 F.3d 888, 907 n.2 (7th Cir. 2012); *see also Williams v. Banning*, 72 F.3d 552, 553 (7th Cir. 1995) (Title VII's definition of "employer," which includes agents, is "a statutory expression of traditional *respondeat superior* liability and imposes no individual liability on agents"). Lugo concedes as much. *See* Resp. to Hill 3 ("Employees cannot be sued under Title VII."). Moreover, aside from noting his position as president of IBEW and the location of his former office with IBEW District 6, *see* FAC ¶ 5, Lugo does not mention Stephenson or in any way connect any of the allegedly discriminatory actions to Stephenson. Thus, the Title VII claims against Stephenson are dismissed with prejudice.

### B. Administrative Exhaustion

A person bringing suit under Title VII must first file an EEOC charge and receive a right-to-sue letter from the EEOC. *See* 42 U.S.C. § 2000e–5(f)(1)(A). When originally filed with the IDHR, an EEOC charge must be filed within 300 days of the allegedly unlawful employment practice. 42 U.S.C. § 2000e–5(e)(1). The proper scope of a judicial proceeding stemming from an EEOC charge "is limited by the nature of the charges filed with the EEOC." *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1110 (7th Cir. 1992). A plaintiff may only bring claims that are originally included in the EEOC charge or are "reasonably related to the allegations of the EEOC charge and growing out of such allegations." *Moore v. Vital Prods., Inc.,* 641 F.3d 253, 256-57 (7th Cir. 2011) (internal quotations omitted). To be "like or reasonably related" to the allegations in the EEOC charge, the relevant claim "'must, at minimum, describe the same conduct and implicate the same individuals.'" *Id*. at 257 (quoting *Cheek v. W. & S. Life Ins. Co.,* 31 F.3d 497, 501 (7th Cir. 1994)). This gives the EEOC the opportunity to investigate the conduct and seek conciliation prior to initiating a lawsuit. *Conner v. Illinois Dep't of Nat. Res.*, 413 F.3d 675, 680 (7th Cir. 2005). An "'aggrieved employee may not complain to the EEOC of

only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Id.* (quoting *Rush*, 966 F.2d at 1110).

In the EEOC charge giving rise to this suit—the November 15, 2013 charge—Lugo named only Local #134 as a respondent, so his claim against defendants other than Local #134 appears to be barred for failure to exhaust administrative remedies. "Ordinarily, a party not named as the respondent in an EEOC charge may not be sued under Title VII." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1089 (7th Cir. 2008). The Seventh Circuit has recognized an exception to this rule "'where an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings.'" *Id.* (quoting *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir. 1989)). Taking all facts pleaded as true, however, there is no indication that any defendant other that Local #134 had notice of the charge or the opportunity to participate in any sort of conciliation proceedings. *See* Hill Mem. in Supp. 8-9, ECF No. 36; Local #538 Mem. in Supp. 5-6, ECF No. 40.

Lugo argues that he subsequently amended his original EEOC charge and that the amendments relate back to the date of filing the November 15, 2013 charge. A plaintiff may amend an EEOC charge "to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein." *Fairchild v. Forma Sci., Inc.*, 147 F.3d 567, 575 (7th Cir. 1998) (citing 29 C.F.R. § 1601.12(b)). Any additional charges "related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." *Id.*

The subject matter of the original charge was Local #134's denial of Lugo's union applications and the removal of his journeyman classification based on his race and national

origin. *See* FAC Ex. B; *see also* FAC ¶¶ 13-14, 32-33. The additional charges Lugo has filed

since the November 15, 2013 charge do not grow out of those complaints, however; the new

charges, which all arise from events occurring *after* Lugo filed his original EEOC complaint,

allege: (1) from November 2013 through October 2014, IBEW International, IBEW District 6,

and Local #134 and #538 did not adequately represent Lugo, and he was harassed because of his

national origin; (2) in October 2014, Skanska subjected Lugo to different terms and conditions of

employment and Lugo was harassed then eventually terminated, all because of his national

origin; (3) from November 15, 2014 through December 24, 2014, Titan discriminated against

Lugo because of his national origin and retaliated against him based on his labor union activity;

and (4) Local #134 terminated Lugo on December 24, 2014 in retaliation for the EEOC charges

he filed against Local #134 in 2014 and 2015. *See* Supp. Resp. New Info. Exs. 1-5, 11-12, ECF

No. 71.

These subsequent charges do not merely cure technical defects or clarify the allegations

made in the original charge; these are new allegations based on more recent events against a

number of additional parties. Thus, the later-filed charges do not amend the original charge and

do not relate back to November 15, 2013; they are beyond the scope of the original EEOC charge

upon which this lawsuit is based. As noted in his most recent supplemental response, Lugo has

now received notices of right-to-sue for all but the most recent two charges. *See* Supp. Resp.

New Info. Exs. 6-10. While those notices of right-to-sue authorize the filing of new lawsuits,

those charges and the discriminatory conduct alleged therein are not at issue in the First

Amended Complaint. Because the EEOC charge underlying this lawsuit is limited to discrete

claims of discrimination against Local #134, the Title VII claims of discrimination must be

dismissed as to the remaining defendant employers: Local #538, Skanska, and Titan. *See*

*Tamayo*, 526 F.3d at 1089-90 (administrative remedies exhausted only as to parties with notice of EEOC charge and opportunity to participate in conciliation proceedings); *Conner*, 413 F.3d at 680 (allegedly discriminatory non-promotion post-dating EEOC charge necessarily outside the scope of the charge).

### C.      Discrimination Claim Against Local #134

The sole Title VII discrimination claim that Lugo has administratively exhausted and that is not time-barred, then, is a claim against Local #134 for race discrimination based on the denial of his applications for union membership and his job classification. Nevertheless, Lugo's claim against Local #134 is limited to conduct occurring within a discrete time-frame: as noted above, an EEOC charge must be filed within 300 days of the allegedly unlawful employment practice. 42 U.S.C. § 2000e–5(e)(1). Here, 300 days prior to November 15, 2013 (when Lugo filed the charge with the IDHR) is January 19, 2013. Thus, any claim for discrimination under Title VII based on events prior to January 19, 2013 must be dismissed with prejudice as time-barred.[7] *See* FAC ¶¶ 13-17.

Lugo does not state in the First Amended Complaint, however, that he applied for and was denied union membership within this time period or that his classification was changed during this time period. The only events Lugo describes in this time period include "ongoing

_____

[7] Lugo argues that the 300-day period should be equitably tolled because he did not have enough information to support the filing of a discrimination charge within the statute of limitations. Resp. to Local #134 2-3, ECF No. 51 (citing *Blumberg v. HCA Management Co.*, 848 F.2d 642, 644-45 (5th Cir. 1988)). The only later-acquired information Lugo identifies is the content of Facebook posts and the identity of the posters (he states that he had prior knowledge of the Facebook posts, just not the specifics). That information, however, is not part of the time-barred allegations. *See* FAC ¶¶ 13-17 (describing application for union membership, removal of Journeyman Electrician credential, termination from Freeman Electrical contractors, and replacement with less experienced, Caucasian electricians). The Court, therefore, rejects this argument. *See Jones v. Res-Care, Inc.*, 613 F.3d 665, 670 (7th Cir. 2010) (rejecting equitable tolling in Title VII case where plaintiff failed to explain why he did not know he had a claim "despite all due diligence").

harassment by Caucasian union members," consisting of threats, spitting near him, and placing a noose in his tool bag. FAC ¶¶ 19-22.

The facts alleged in the complaint and the attached Facebook page, however, indicate that the comments and actions by Lugo's coworkers were motivated by Lugo's political views as they relate to labor unions rather than to any racial animus. *See* FAC Ex. A (reference to "RTW" legislation). Lugo, for example, relies on a Facebook post on a Local #134 members-only page from March 2013, which states, "[Lugo n]eeds to have his teeth kicked in." FAC ¶ 21. The First Amended Complaint does not quote this Facebook post in its entirety, however; the full quote reads, "[Lugo n]eeds to have his teeth kicked in he doesn't pays [sic] dues and is backed by some RTW fucks with cash for his attorneys."[8] FAC Ex. A. This Facebook page includes additional references to Lugo, such as, ". . . guys like [ ] Lugo are worse than someone who crosses a picket line. . . . voting for someone who VOWED to end Davis-Bacon act, end all government PLA's, and pass national RTW is endangering our whole way of life. Like I said CANCER to our Union." FAC Ex. A. Over a year later, in October 2014, Local #134 members made additional Facebook posts about Lugo that clearly reflect continuing animosity relating to Lugo's perceived support for right-to-work laws: "John Lugo citing [sic] . . . Does he have a target on his back? . . . I can't believe he has not had an accident yet." FAC ¶ 27, Ex. C.

Lugo also alleges that he found a hangman's noose in his tool bag in May 2013, which he associated with racist acts against minorities. It can be questioned whether, in the context of obvious animosity predicated on perception that Lugo favored right-to-work laws, it is

_____

[8] On a motion to dismiss, "a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, [and] documents that are central to the complaint and are referred to in it . . . ." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The Court presumes that "RTW" in reference to labor union activity stands for "Right-to-Work."

reasonable to infer the appearance of a noose as evidence of hostility to Hispanics,[9] but even assuming it to be so, it does not suffice as a basis for a discrimination claim against the Union. Again, as a threshold matter, Lugo was not a member of Local #134 during this period, and there is no basis to conclude that these acts were an "attempt to cause an employer to discriminate" against Lugo based on his race. Nor is there a basis in the allegations of the complaint from which to infer that either Lugo's employer at the time, Neutron Electric, or the leadership of Local #134 even knew about the incident. "Title VII makes both employers and unions liable for their own conduct, not that of employees or members. Thus when line employees engage in discrimination, employers are not automatically liable; only if they know (or ought to know) what is going on and choose to do nothing (or select ineffectual steps when better ones are available) are they liable." *Maalik v. Int'l Union of Elevator Constructors, Local 2*, 437 F.3d 650, 653 (7th Cir. 2006). Lugo alleges that he notified security at the B.P. Refinery, where he was working at the time, about this incident, but even if B.P., rather than Neutron, were deemed to be Lugo's employer, its failure to identify or discipline the perpetrator(s) would not give rise to liability on the part of the union. "[I]f a union discriminates in the performance of its agency function, it violates Title VII, but not otherwise." *Id*. at 652 (internal quotation marks omitted); *see also Johnson v. Int'l Longshoreman's Ass'n, Local 815 AFL-CIO*, 520 F. App'x 452, 453-54 (7th Cir. 2013) ("A union is liable under Title VII for discriminating against its members when performing union functions, such as job referrals, but it is not liable for an employer's actions.");

---

[9] *See generally* The Law of the Noose: A History of Latino Lynching, 44 Harv. C.R.-C.L.L. Rev. 297, 298 (2009) (noting that "[f]or better or worse, blacks own the [noose] symbol and its malevolent history," but reporting on research showing "that Latinos, particularly Mexican Americans in the Southwest, were lynched in large numbers during roughly the same period when lynching of blacks ran rampant").

*E.E.O.C. v. Pipefitters Ass'n Local Union*, 597, 334 F.3d 656, 659 (7th Cir. 2003) (employer, rather than union, is responsible for preventing and responding to workplace harassment).

Thus, even if the allegedly harassing activity were based on Lugo's race and were within the scope of the EEOC charge, on the facts alleged, Local #134 would not be liable.[10] Because Lugo has failed to plead facts showing that Local #134 denied his union applications or changed his classification on the basis of his race, the Title VII discrimination claim against Local #134 is dismissed without prejudice.

### D. Retaliation Claims

Title VII's administrative exhaustion requirement does not bar Lugo's retaliation claims: "a Title VII case can embrace not only the allegations in the administrative charge but also . . . retaliation for the filing of the charge." *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989); *see also Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1030 (7th Cir. 2013) ("a plaintiff who alleges retaliation for having filed a charge with the EEOC need not file a second EEOC charge to sue for that retaliation").[11] To state a claim for retaliation under Title VII, a plaintiff must allege that he engaged in protected activity, and, as a result, was subjected to an

---

[10] Lugo's original Complaint included a hostile work environment claim, *see* Compl. ¶ 12(h); his First Amended Complaint does not expressly renew that claim. Even if it did, however, the claim would fail: to state a Title VII hostile work environment claim, "a plaintiff must allege (1) she was subject to unwelcome harassment; (2) the harassment was based on her national origin or [race] (or another reason forbidden by Title VII); (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is basis for employer liability." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833-34 (7th Cir. 2015). Because Lugo has failed to demonstrate that any of the animosity expressed towards him was based on his race or that the Union leadership was aware of it but failed to respond, he has failed to state a hostile work environment claim.

[11] The Seventh Circuit has indicated, however, that it is an open question "whether unions in their capacity as labor organizations can be liable under Title VII for retaliation." *See Ali v. Int'l Bhd. of Elec. Workers, Local 21*, 411 F. App'x 917, 918 (7th Cir. 2011). Because the union defendants have not raised this objection, however, the Court need not explore the issue further.

adverse employment action. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014). An "adverse employment action simply means an employer's action that would dissuade a reasonable worker from participating in protected activity." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833 (7th Cir. 2015) (internal quotation marks omitted).

### i.    Local #134[12]

Lugo's retaliation claim against Local #134 is based on a single incident. On November 25, 2013, ten days after Lugo filed the EEOC charge against Local #134, union official Diane Gartland refused to allow Lugo to sign the "out of work book" for electricians seeking work. FAC ¶ 25. The complaint offers no explanation as to why Lugo, who at that point was not a member of the union, was entitled to sign the book nor does it allege that Gartland knew of Lugo's EEOC complaint. In any event, Lugo's application for Local #134 membership was approved the very next day, so this incident does not plausibly suggest that Lugo was denied access to the out-of-work book in retaliation for filing an EECO complaint. FAC ¶ 26. The motion to dismiss the Title VII retaliation claim against Local #134 is, therefore, granted without prejudice.

### ii.    Local #538, Skanska, and Titan

Lugo's retaliation claims against Local #538, Skanska, and Titan are all based on events that occurred approximately one year after Lugo filed the EEOC charge against Local #134. The Skanska and Local #538 claims are intertwined: Lugo worked for Skanska for approximately two weeks in October 2014 but was terminated because of a "reduction in workforce." FAC ¶ 28.

---

[12] Although Local #134 moved to dismiss the Title VII retaliation claim as beyond the scope of the EEOC charge, it did not specifically address these allegations or argue that Lugo failed to state a claim for retaliation. *See* Local #134 Mem. in Supp. 3-6.

That same day, Skanska contacted Local #538 to request 15 electricians for the same job site from which Lugo had been terminated. FAC ¶ 28. When Lugo contacted Local #538 to confirm that he was eligible to return to Skanska as part of the group of electricians, he was informed that "he specifically was denied employment by Skanska for unknown reasons." FAC ¶ 29. Shortly thereafter, Lugo worked for Titan for nearly six weeks in November and December 2014 but was terminated as part of a "one man layoff, reduction in workforce." FAC ¶ 30.

The complaint fails to state a claim of retaliation against any of these defendants. To start, there are no allegations that Lugo was ever a member of Local #538, or that Local #538, Skanska, or Titan knew Lugo had filed an EEOC charge. Without such knowledge, none of the defendants could possibly (let alone plausibly) have retaliated against him based on the charge. *See Tomanovich v. City of Indianapolis,* 457 F.3d 656, 668 (7th Cir. 2006) ("It is not sufficient that [an employer] could or even should have known about [an employee's] complaint; [the employer] must have had actual knowledge of the complaints for [its] decisions to be retaliatory." (brackets in original) (quoting *Luckie v. Ameritech Corp.,* 389 F.3d 708, 715 (7th Cir. 2004))). What is more, Lugo did not file the EEOC charge against any of these defendants, so the charge would not in any event supply a basis to infer retaliation against Lugo. In Lugo's responses to the motions to dismiss, he asserts that the defendants "colluded" with each other to deny him employment in retaliation for filing the EEOC charge. *See* Resp. to Titan 2, ECF No. 57; Resp. to Local #538 2, ECF No. 58; Resp. to Skanska 2, 11, ECF No. 59. The allegation of collusion, without any supporting factual basis, is merely a legal conclusion that does not receive the presumption of truth on a motion to dismiss.[13] *See Iqbal*, 556 U.S. at 679 ("While legal

---

[13] Lugo's assertion that Local #538 is part of the same parent organization as Local #134 and that they share "operational commonalities and functions in the areas of [c]ommunications, information, membership, policies, procedures, operating guidelines, etc.," Resp. to Local #538

conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Further, Lugo's interactions with these three defendants occurred a year after he filed the EEOC charge: "a retaliation claim can [ ] be so bare-bones that a lengthy time period between the protected activity and the alleged retaliation will make any causal connection between the two implausible." *Carlson*, 758 F.3d at 828; *see also Carmody v. Bd. of Trustees of Univ. of Illinois*, 747 F.3d 470, 480 (7th Cir. 2014) (affirming dismissal of retaliation claim where plaintiff "has given [ ] no potential explanation for the long delay between his report and the alleged retaliation"). Lugo provides no evidence of retaliation other than timing, which, considering the lengthy gap between the protected activity and the alleged retaliation, is insufficient to state a claim. Even if timing, alone, were enough, Skanska and Titan both ***hired and fired*** Lugo after he filed the EEOC charge, which renders implausible any inference that his termination was in retaliation for the charge.

Accordingly, the Title VII retaliation claims against Local #538, Skanska, and Titan are dismissed without prejudice for failure to state a claim.

---

2, is irrelevant and does not support his allegation of collusion, particularly because he attributes no allegedly retaliatory conduct to Local #538. *See* FAC ¶ 29 ("he specifically was denied employment ***by Skanska***" (emphasis added)).

## II.    Section 1981 Claims

Section 1981 states, in relevant part:

> All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . .

42 U.S.C. § 1981. Unlike Title VII claims, § 1981 claims are not limited to allegations first filed in an EEOC charge, and plaintiffs need not obtain an EEOC right-to-sue letter. *See Smith*, 681 F.3d at 907 n.2. And as opposed to Title VII, individuals may be liable under § 1981. *See id*.

Section 1981 claims require proof of the same prima facie elements as Title VII claims. *See, e.g.*, *Antonetti v. Abbott Labs.*, 563 F.3d 587, 592 n.4 (7th Cir. 2009) ("[B]ecause both [Title VII and § 1981] require a plaintiff to prove the same elements to make out a prima facie case, the claims rise or fall together."). To state a prima facie claim for relief under § 1981, Lugo must (1) identify his national origin or that he is a member of a racial minority; (2) show that the defendants had the intent to discriminate on the basis of his race or national origin; and (3) show that the discrimination concerned the making or enforcing of a contract. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 n.4 (7th Cir. 2006); *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996)); *see also Rosado v. Chicago Transit Auth.*, No. 13 C 5594, 2014 WL 237937, at *2 (N.D. Ill. Jan. 22, 2014).

It is undisputed that Lugo is a member of a racial minority—Hispanic—but he has not plead facts evidencing intent on the part of any defendant to discriminate on the basis of Lugo's race.

### A.    Defendant Stephenson

The claims of racial discrimination and retaliation under § 1981 against Stephenson must be dismissed. As noted *infra* at 7, the First Amended Complaint does not contain any allegations

of any sort relating to Stephenson: Lugo does not allege that Stephenson took any adverse employment action against him on the basis of Lugo's race or that Stephenson knew of the EEOC charge and/or participated in any way in Lugo's hiring or firing from any of the job sites mentioned in the complaint. The total absence of factual allegations concerning Stephenson require the dismissal of the § 1981 claims without prejudice.

### B. Defendants Skanska and Titan

Skanska and Titan argue that Lugo's § 1981 claims must be dismissed because Lugo has failed to state facts demonstrating that either defendant discriminated against him based on his race.[14] *See* Skanska Mem. in Supp. 7-10; Titan Mem. in Supp. 6-8. The Court agrees. The few factual assertions pertaining to Skanska and Titan establish that Lugo worked for each briefly and was let go from each position as part of a reduction in workforce. *See* FAC ¶¶ 28-30. Nothing in Lugo's allegations "supports an inference, or even suggestion, that any employment decision made by his supervisor was based on racial animus. [He] alleges no facts, direct or circumstantial, that indicate[ ] that his supervisor was prejudiced against [Hispanics] or at the supervisor based his personnel decisions on race." *Barnes v. Solo Cup Co.*, No. 13 C 03159, 2013 WL 2156054, at *2 (N.D. Ill. May 16, 2013). While Lugo generally asserts that his terminations were pretextual and that the "defendant's [sic] . . . hir[ed] lesser qualified Caucasian electricians" to replace him, he has not supported this conclusory assertion with facts. FAC ¶ 34; *see Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid

---

[14] Skanska and Titan also argue that Lugo's § 1981 claims must be dismissed because claims of national origin discrimination are not permitted under § 1981. *See* Skanska Mem. in Supp. 4-5, ECF No. 34; Titan Mem. in Supp. 4-5, ECF No. 47; *contra* Hill Reply 4 n.2, ECF No. 66 (withdrawing argument). This is incorrect: "Section 1981 bars employers from discriminating and retaliating against employees based on the employee's race ***or national origin***." *Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 805 (7th Cir. 2014) (emphasis added) (citing *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 n. 4 (7th Cir. 2006)).

of 'further factual enhancement.'"). Because Lugo has not stated a claim for race discrimination that is plausible rather than merely conceivable or speculative, the motion to dismiss the § 1981 race discrimination claims against Skanska and Titan are granted without prejudice. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556.

### C.      Locals #134 and #538

Although neither union defendant formally moved to dismiss the § 1981 claims, the analysis as to the deficiencies of the claims against Locals #134 and #538 are the same: Lugo has not alleged any facts showing (or permitting an inference) that the unions discriminated against him on the basis of his race. As detailed *infra*, the facts surrounding Lugo's involvement with the members of Local #134 suggest that his coworkers took issue with his political views as they relate to labor unions rather than evidence race discrimination. *See infra* at 12-13; *see also Pipefitters Ass'n Local Union*, 334 F.3d at 658 (standards under Title VII and § 1981 are the same with respect to race discrimination claims against unions). Furthermore, as noted *infra*, Lugo has not alleged any affiliation with Local #538 let alone shown that its failure to employ him was racially motivated. As with the conclusory assertions against Skanska and Titan, the complete lack of factual support for the § 1981 race discrimination claims against Locals #134 and #538 merit their dismissal without prejudice.

### D.      Retaliation Claims

Retaliation also is a cognizable claim under § 1981. *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 887 (7th Cir. 2016); *see also Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 398 (7th Cir. 2007) *aff'd*, 553 U.S. 442 (2008) ("section 1981 encompasses the 'termination of contracts,' and there can be no doubt that a retaliatory discharge is indeed a termination of the employment contract"). Because § 1981 claims require proof of the same prima facie elements as

Title VII claims, *see Antonetti*, 563 F.3d at 592 n.4, Lugo has failed to state claims of retaliation under § 1981 for the same reasons his retaliation claims fail under Title VII. *See infra* at 14-17. The § 1981 retaliation claims against Skanska, Titan, and Locals #134 and #538 are dismissed without prejudice.

*     *     *

For the foregoing reasons, the defendants' motions to dismiss are granted. All claims against defendant Hill, the Title VII claims against defendant Stephenson, and the claims outside of the scope of the EEOC charge are dismissed with prejudice. The remaining claims, listed here, are dismissed without prejudice: the Title VII racial discrimination claim against Local #134; the Title VII retaliation claims against Locals #134 and #538, Skanska, and Titan; and the § 1981 race discrimination and retaliation claims against Locals #134 and #538, Stephenson, Skanska, and Titan. While it is true that Lugo has already amended his complaint once in response to prior motions to dismiss, Lugo has not had the opportunity to amend his complaint in response to a ruling by the Court as to the deficiencies in the complaint; generally, a plaintiff should have that opportunity. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015) ("[A] plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed."); *Alioto v. Town of Lisbon,* 651 F.3d 715, 721 (7th Cir. 2011) ("[A] motion to dismiss under Rule 12(b)(6) is not a responsive pleading and so, if an answer has not been filed, a plaintiff ordinarily retains the ability to amend his complaint once as a matter of right, even after a court grants a motion to dismiss."). Thus, to the extent that Lugo can attempt, in good faith, to cure the deficiencies in the First Amended Complaint as to the claims dismissed

without prejudice, he may file a Second Amended Complaint within 30 days of this order. In the absence of a timely filed Second Amended Complaint, the case will be dismissed with prejudice.

Dated: March 30, 2016

John J. Tharp, Jr.
United States District Judge