**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN LUGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15 CV 03769 |
| | ) | |
| INTERNATIONAL BROTHERHOOD | ) | Judge John J. Tharp, Jr. |
| OF ELECTRICAL WORKER LOCAL | ) | |
| #134, EDWIN D. HILL, LONNIE R. | ) | |
| STEPHENSON, INTERNATIONAL | ) | |
| BROTHERHOOD OF ELECTRICAL | ) | |
| WORKERS LOCAL #538, MTS | ) | |
| TITAN ELECTRIC, INDUSTRIAL | ) | |
| CONSTRACTORS SKANSKA, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff John Lugo, a Hispanic electrician with American Indian heritage, has sued two unions, two of his former employers, and one individual for racial discrimination and retaliation in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2.[1] One of the employers, Industrial Contractors Skanska, Inc., opted to answer the second amended complaint. The other employer, MTS Titan Electric, LLC ("Titan"), the two unions ("Local 134" and "Local 538"), and Lonnie Stephenson have all moved to dismiss under Fed. R. Civ. P. 12(b)(6). For the reasons discussed below, Titan's motion to dismiss is granted in part and denied in part, the union locals' motions to dismiss are denied, and Stephenson's motion to dismiss is granted in full.

---

[1] A second individual defendant, Edwin Hill, was dismissed with prejudice from the first amended complaint. *See Lugo v. Int'l Bhd. of Elec. Workers Local #134*, 175 F. Supp. 3d 1026, 1033 (N.D. Ill. 2016).

## BACKGROUND

For the purpose of this motion to dismiss, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in Lugo's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court need not accept as true legal conclusions and "mere conclusory statements" supported by "[t]hreadbare recitals of the elements of a cause of action." *Id*. The Court addresses Lugo's interactions with each defendant separately in the hope of providing a clearer timeline.

### I. Local 134

Plaintiff John Lugo is a Hispanic electrician of American Indian heritage living in Illinois. Second Am. Compl. ("Compl.") ¶ 11. He was a member of the International Brotherhood of Electrical Workers ("IBEW") union from 1993 through 2007, although it is not clear exactly when he was affiliated with the various locals during this period. *Id.* at ¶ 12. Lugo states he had a "long history of membership and affiliation" with Locals 134 and 538, so presumably he was a member of those units for at least some part of 1993-2007. *Id.* at ¶ 19. Lugo communicated a number of times with his union in 2003 and again in late 2007 through 2008 regarding what he perceived to be disparate treatment of himself and other individuals based on race. *Id.* at ¶ 20.[2] He also communicated with the National Labor Relations Board ("NLRB") three times regarding perceived racial discrimination – on December 9, 2003, August 21, 2012, and February 24, 2014. *Id.* at ¶ 31. Lugo left the IBEW union in 2007, he says, after he was subjected to "racially motivated disparaging remarks" and being laid off when he complained. *Id.* at ¶ 21.

---

[2] Lugo's complaint lists five communications to union officials in 2003 and one to the National Labor Relations Board, one complaint to the union in November 2007, and five complaints to the union in 2008. Compl. ¶ 20. These communications were to various union officials and the local itself.

All this is the backdrop for Lugo's more recent complaints about his treatment by Local 134. Lugo opted to remain unaffiliated with the union until 2012, when he decided to reapply due to "pressure from other union members" and a lack of job placements. *Id*. at ¶ 26. In March 2012, he contacted Local 134 business representative Richard Murphy to re-apply for union membership. *Id*. Lugo alleges that processing a union membership application typically takes a "small number of days, typically less than 5" and that approval is normally "automatic" once a completed application and dues are received. Compl. ¶ 27. Murphy, however, was aware of Lugo's prior complaints to the union and refused to provide Lugo with an application.[3] *Id*. Lugo contacted Murphy "every 2 to 3 days for five months via telephone and email" to try to get an application, but Murphy still refused. *Id*. at ¶ 28.

Lugo finally received an application from Local 134 on July 9, 2012, which he submitted "promptly" thereafter.[4] *Id*. at ¶ 29. Two days later, Lugo's credentials were altered from Group One Member Journeyman Electrician, an experienced category, to "A2 agency payer." *Id*. Lugo alleges this "severely undermined" his employability and that he was laid off from "Grurt Electric" three days later despite having worked there for five years. *Id*. Lugo contacted Murphy to try to get his credentials restored and his application approved. Compl. ¶ 30. Lugo alleges his Journeyman Electrician credentials (which are independent from union membership) were not honored from January 19[5] to November 15, 2013 due to his race, while the credentials of

_____

[3] Lugo alleges the knowledge and the refusal in the same paragraph, but does not specifically state that Murphy decided not to provide an application because of Lugo's prior conduct. However, it is a reasonable inference from Lugo's allegations.

[4] It is not clear whether this application was ever formally denied or just not approved. The complaint does allege that Lugo was denied membership from July 2012 through January 2014. *See* Compl. ¶ 37.

[5] It seems likely that Lugo's credentials were not honored from 2012 until November 2013. The Court previously held as time-barred all discrimination taking place before January 19, 2013, and Lugo's designation of the January 19 – November 15 period may be a result of that

Caucasian members and non-members were honored. *Id*. at ¶ 32. Lugo also alleges that during this time Local 134 was aware of his previous complaints regarding racial discrimination. *Id*. Lugo also alleges that during the same January 19 – November 15, 2013 period, Local 134 denied his applications for union membership on the basis of his race and that Caucasian applicants were "routinely approved." *Id*. at ¶ 31. He specifically notes that he applied for membership again on or about March 15, 2013 and was denied. *Id.* at ¶ 44. He further alleges that, through January 15, 2014, his credentials were manipulated in ways that prevented him from gaining employment or got him fired.[6] *Id.* at ¶ 37.

On March 16, 2013, Lugo became aware that he had been the subject of postings in a union members-only Facebook group. Compl. ¶ 41. Lugo alleges the page contained a series of posting by IBEW members regarding both Lugo's race and his union status. *Id*. Lugo alleges the posts contained racial epithets as well as threats that he should "have his teeth kicked in," a picture of a Mexican individual being hung from a tree, and a picture of "a Mexican man wearing a sombrero with a rope around his neck being pulled by a truck with a confederate flag." *Id*. Lugo alleges the racial postings were later deleted, leaving only ones concerning his union activity. *Id*. All the post authors Lugo identifies are members of Local 134, although it is not clear if only Local 134 members participated.

On May 10, 2013, Lugo discovered a hangman's noose in his bag while working for Neutron Electric. Compl. ¶ 42. Lugo alleges other minority workers had also found nooses in their tool bags. *Id*. Lugo reported the incident to Murphy on May 15, 2013, but Local 134 did not

---

ruling. *See Lugo v. Int'l Bhd. of Elec. Workers Local #134*, 175 F. Supp. 3d 1026, 1035 (N.D. Ill. 2016).

[6] It is not clear if this manipulation refers to his downgrade from Journeyman Electrician or some other conduct.

respond. *Id*. Lugo alleges he was also subjected to threats of assault, racial slurs, and was spat on by Caucasian members of Local 134. *Id*. at ¶ 43. He reported these incidents to Murphy on April 15, September 15, and October 15, 2013 but received no response other than continued denials of his requests for union membership and reclassification. *Id*.

Lugo filed an Equal Employment Opportunity Commission ("EEOC") charge against Local 134 on November 15, 2013 regarding his credentials and the denial of his application to rejoin the union. *See* EEOC Charge, ECF No. 95 Ex. 1. Ten days later, on November 25, 2013, Local 134 official Diane Gartland refused to allow Lugo to sign the "out of work book" that union and non-union electricians used to seek work. Compl. ¶ 48. Instead of allowing him to sign, Gartland rolled her eyes at Lugo and mumbled "I don't care how many EEOC complaints you file, you're not signing this book, you better get used to selling tacos." *Id*. The next day, November 26, 2013, Lugo was granted union membership, but he was still not allowed to sign the "out of work" book. *Id*. at ¶ 49.

Lugo received his right to sue letter from the EEOC on January 30, 2015 and filed his first complaint in this lawsuit on April 29, 2015. Compl. ¶ 34.

**II. Local 538**

Lugo alleges he had some history of "membership and affiliation" with Local 538, by which he presumably means during some portion of his first round of union membership from 1993-2007. Compl. ¶ 19. The first time Local 538 meaningfully enters the narrative of this case is October 2014, when Lugo alleges Local 538 denied him membership from October 15-30, 2014 "as a direct result of racial discrimination and retaliation." *Id*. at ¶ 37. Lugo also alleges that Local 538 manipulated or altered his credentials during an unspecified period of time. *Id* at ¶ 40.

Lugo further alleges that Local 538 was aware of his prior complaints to union officials and government agencies, presumably including the EEOC charge against Local 134. *Id*.

On October 21 2014, Lugo was terminated from his job at Skanska. Compl. ¶ 54.1.[7] At that time, an unidentified job steward of Local 538 told Lugo he would "never get a job there after filing a race discrimination complaint" and that he should be "working landscaping or removing insulation" rather than doing "white man work." *Id*. at ¶ 54.2. Lugo further alleges that Local 538 official Jim Baily told him, during an October 22, 2014 conversation in which Lugo complained he had not received the proper pay rate at Skanska, "That pay rate is only for white workers." *Id*. at ¶ 38. Lugo further alleges that Local 538, along with Local 134, communicated with each other and to various employers about Lugo, including racially motivated disparaging remarks and denied Lugo work as a result of his EEOC charge. *Id*. at ¶ 37, 53.

Lugo filed a claim with the EEOC against Local 538, which was dated July 20, 2015 but not received until August 4, 2015. *See* Supplemental Response, Ex. 4, ECF No. 71. Lugo received his right to sue letter from the EEOC on September 29, 2015. Lugo filed his right to sue letter on the docket in this case on October 9, 2015. *See id*.

### III. Titan

Titan is "an electrical contracting company" based in Itasca Illinois. Compl. ¶ 8. Lugo began working at Titan on November 15, 2014. *Id*. at ¶ 57. One month later, Titan Project Manager Ken Kovach, during a conversation with Titan foreman Brett Epperson and a job steward from Local 134, pointed to Lugo and said "so he is the one that filed with EEOC, can't believe he would do that to his own union. Somebody needs to call immigration on him." *Id*. A few days later, on December 24, Kovach told Lugo he was fired as a result of a "one-man layoff,

---

[7] The complaint includes two paragraphs numbered "54." This opinion will refer to the first as "54.1" and the second as "54.2."

reduction in force" while a Local 134 job steward who walked Lugo to his car said "you never going to find a job around here." *Id*. Lugo alleges Titan learned about his EEOC complaint against Local 134 through Kovach, who was told by Local 134 official Donald Flinn and a Local 134 job steward. *Id*. at ¶ 58. Lugo alleges Titan and Local 134 coordinated to keep Lugo from working in retaliation for his EEOC complaint against Local 134. *Id.* at ¶ 59.

Lugo filed a charge with the EEOC on October 2, 2015 stating that he had been "engaged in activity relating to labor union membership," had been laid off, and had been "discrimination against because of my national origin, Hispanic, and in retaliation." Ex. 11, ECF No. 71. He received a right to sue letter from the EEOC on October 29, 2015. See Ex. 2, ECF No. 82.

**IV. Stephenson**

Lonnie Stephenson is currently the President of the Industrial Brotherhood of Electrical Workers, an international organization, and was formerly the International Vice President of District Six of IBEW. Compl. ¶ 7. Stephenson's alleged direct involvement is minimal. Lugo alleges that Stephenson was informed via email (it is not clear by whom) about the racial postings on the IBEW Facebook page and the noose found in Lugo's tool bag. *Id*. at ¶ 42. Lugo further alleges that Stephenson knew that "the same group of guys" were similarly harassing other minority members, and failed to do anything to stop it. *Id*. Lugo similarly alleges that Stephenson was informed of the incidents at Skanska and Titan (presumably his firing from both and the racially charged comments). *Id.* at ¶ 59. Lugo alleges Stephenson was informed about Lugo's EEOC charge by Local 134. *Id*. at ¶ 53. It does not appear Lugo ever filed an EEOC charge against Stephenson directly, although he did file charges against Stephenson's employers (the "IBEW International Office" and "IBEW District 6") on July 20, 2015. *See* Ex. 1-2, ECF

No. 82. Lugo received right to sue letters on both of those charges on September 29, 2015. *See* Ex. 6-7, ECF No. 82.

## DISCUSSION

To survive a motion to dismiss, Lugo "does not need detailed factual allegations," but rather must only "provide the grounds of his entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). The facts alleged "must be enough to raise the right to relief above the speculative level." *Id*. Lugo brings four claims against each defendant – a racial discrimination claim and a retaliation claim under Title VII and a racial discrimination claim and a retaliation claim under 42 U.S.C. § 1981. As Lugo is pro se, the Court construes his complaint liberally. *See Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996) ("It is, by now, axiomatic that district courts have a special responsibility to construe pro se complaints liberally"). Local 134, Local 538, Stephenson, and Titan have all moved to dismiss all the claims against them. Thus, the Court discusses all four claims against each defendant in turn.

### I. Local 134

A union discriminates in violation of Title VII and § 1981 "[i]f it discriminates in the performance of its agency function." *E.E.O.C. v. Pipefitters Ass'n Local Union 597*, 334 F.3d 656, 659 (7th Cir. 2003). Unions do not have an "affirmative duty . . . to investigate and rectify discrimination by the employer," only to refrain from discriminating themselves. *Id.* at 660. Here, the union violated that duty under both Title VII and § 1981 so Local 134's motion to dismiss is denied.

### A. Title VII Discrimination

Title VII explicitly bars a union from "exclud[ing]" or "expel[ling]" from its membership, or otherwise "discriminat[ing] against, any individual because of his race, color, religion, sex, or

national origin." 42 U.S.C. § 2000e-2(c)(1). Furthermore, a union may not "fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities" on account of his race. 42 U.S.C. § 2000e-2(c)(2). Generally speaking, a racial discrimination complaint need only allege that an employer (or other party liable under Title VII—here, a union) "instituted a (specified) adverse employment action against the plaintiff on the basis of his race." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013).

Here, Lugo has alleged, within the 300 days between January 19, 2013 and November 15, 2013 (when he filed his EEOC charge), that Local 134 denied his application for membership, including on March 15, 2013. Compl. ¶ 44. Combined with the allegations that during the listed period Caucasian applicants were routinely approved but Lugo was denied "on the basis of his race" (*Id.* at. ¶ 31), Lugo has charged a specific factual incident in which he was excluded from membership by virtue of his race in violation of Title VII. Furthermore, Lugo's allegation that, during January through November of 2013, he was denied Journeyman Electrician credentials on the basis of his race would also be a violation of Title VII because Lugo alleges doing so deprived him of employment opportunities. *See id.* at ¶ 32; *Association of Mexican-American Educators v. California*, 231 F.3d 572, 584 (9th Cir. 2000) (discriminatory licensing of teachers a violation of Title VII); *Tuli v. Brigham & Women's Hosp., Inc.*, 566 F. Supp. 2d 32, 53 (D. Mass. 2008) (granting preliminary injunction against credentialing committee in Title VII case). Local 134 argues that these allegations are conclusory, but the Court finds they provide sufficient factual basis, providing a definite action (the denial of Lugo's application and the refusal to reissue his credentials) during a specific time period, on the basis of his race. This is all that is needed at the pleading stage. *See Lucas v. Vee Pak, Inc.,* 68 F. Supp. 3d 870, 878 (N.D. Ill. 2014)

("To state a claim for employment discrimination, the plaintiff must simply aver that he suffered an adverse employment action on account of his race.") (*citing Luevano v. Wal-Mart Stores, Inc.,* 722 F.3d 1014 (7th Cir. 2013)). As such, the Court denies Local 134's motion to dismiss with regard to the Title VII discrimination claim.[8]

## B. Section 1981 Discrimination

42 U.C.S. § 1981(a) prohibits racial discrimination in the "mak[ing] and enforc[ing]" of contracts. This protection includes both the making and terminating of contracts as well as the "enjoyment of all benefits, privileges, terms, and conditions" of such relationships. 42 U.S.C. § 1981(b). Title VII and § 1981 claims are judged by the same general standard. *See E.E.O.C. v. Pipefitters Ass'n Local Union 597*, 334 F.3d 656, 658 (7th Cir. 2003). Therefore, the same facts that give Lugo a cause of action under Title VII provide a cause of action under § 1981. Although he has not specifically identified union membership as a "contract," the Court assumes that union membership, in which a member pays dues in exchange for certain benefits, is a contract under § 1981. *See Mendez v. Reinforcing Iron Workers Union Local 416*, No. 2:09-CV-02332-LRH, 2011 WL 6400284, at *3 (D. Nev. Dec. 20, 2011) (" A union or hiring hall would certainly violate § 1981's prohibition on racial discrimination in the making and enforcement of contracts by limiting membership or benefits on account of race, thus adversely affecting not only the worker's potential employment with outside employers but also the worker's contractual relationship with the union itself."); *Dobbins v. Local 212, Int'l Bhd. of Elec. Workers, AFL-CIO*, 292 F. Supp. 413, 442 (S.D. Ohio 1968) ("Membership in and/or a referral status in a union is a contractual relationship and/or a link in the chain of making a contract. The subject matter is,

---

[8] The Court's prior order dismissed with prejudice any Title VII claims of discrimination based on events prior to January 19, 2013 as time-barred. *Lugo v. Int'l Bhd. of Elec. Workers Local #134*, 175 F. Supp. 3d 1026, 1035 (N.D. Ill. 2016). That dismissal stands and Lugo may not rely on any such conduct by the union to prove his discrimination claims.

therefore, within 42 U.S.C. § 1981."); *James v. Ogilvie*, 310 F. Supp. 661, 663 (N.D. Ill. 1970) ("as membership in a labor union is a contractual relationship or at least a link in obtaining an employment contract, the rights to union membership without regard to race or skin color also exists under 42 U.S.C. § 1981"). Similarly, altering his credentials so Lugo did not qualify for certain jobs would also prevent the making of employment contracts for those jobs. *See Walker v. Abbott Labs.*, 340 F.3d 471, 476 (7th Cir. 2003). Therefore, Local 134's motion to dismiss with regard to the § 1981 discrimination claim is denied.

## C. Retaliation Claims

If a plaintiff engages in a protected activity and is subjected to an adverse employment action as a result, he has a claim under Title VII for retaliation. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014). On a previous motion to dismiss, this Court dismissed without prejudice Lugo's retaliation claim against Local 134 because although Lugo had alleged he had not been allowed to sign the out of work book, he had not explained why he was entitled to sign the book or that Gartland knew about his EEOC complaint. *Lugo v. Int'l Bhd. of Elec. Workers Local #134*, 175 F. Supp. 3d 1026, 1038 (N.D. Ill. 2016). Lugo has cured these infirmities in his new complaint, alleging that all electricians, regardless of union membership, are allowed to sign the book, and that Gartland referenced Lugo's EEOC complaint when she refused to allow him to sign the book. Compl. ¶ 48. Although Lugo was granted formal union membership the next day, Lugo alleges that he was still prevented from signing the out of work book following this grant of membership. *Id.* at ¶ 49.

Local 134 attaches to its motion evidence suggesting that Lugo was in fact allowed to sign the out of work book and was sent to a job at Freeman Electric from November 25 (when Lugo claims he was unable to sign the book) through December 7, 2013. Local 134 Mem. at 9,

ECF No. 95. Lugo disputes the authenticity of the attached evidence, claiming it has been altered or mislabeled. Pl.'s Resp. at 4. ECF No. 106. These are exactly the sorts of factual disputes that are inappropriate for resolution at the motion to dismiss stage, when the allegations made in the complaint must be regarded as true. *See In re Wade,* 969 F.2d 241, 249 (7th Cir. 1992) ("The district court is confined to the pleadings when considering a motion to dismiss."). Although the defendants are correct that documents attached to a motion may be considered if they are "referred to in the plaintiff's complaint and are central to his claim," the cases referenced by Local 134 were instances where the authenticity of the attached document was not at issue. *See Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014). It would be particularly inappropriate to resolve a fact dispute over the authenticity of the out of work book logs, moreover, when Lugo has not been provided access to the book.[9] Thus, although it does not clear the threshold of a plausible claim with much room to spare, the Court denies Local 134's motion to dismiss the Title VII retaliation claim. Retaliation is also actionable under § 1981, with the same prima facie elements as a Title VII claim. *See Antonetti v. Abbott Labs.*, 563 F.3d 587, 591 n. 4 (7th Cir. 2009). Therefore, the Court denies Local 134's motion to dismiss with regard to Lugo's § 1981 claim as well.

**II. Local 538**

Lugo has alleged two specific incidents that might generate liability under Title VII and § 1981 for Local 538. First, he has alleged that his application for union membership was denied from October 15, 2014 to October 30, 2014 as a result of racial discrimination. Compl. ¶ 37. Lugo has alleged that union membership applications normally take around 5 days to process, so 15 days is something of an anomaly. *See id.* at ¶ 27. Second, Lugo alleged that following his

---

[9] For his part, Lugo must of course understand that the requirements of Fed. R. Civ. P. 11(b)(3) apply, so his factual contentions are required to "have evidentiary support."

termination at Skanska, a Local 538 job steward told him he would "never get a job there after filing a race discrimination complaint" and that being an electrician was "white man work." *Id*. at ¶ 54. When Lugo complained about the compensation he received from Skanska, Local 538 employee Jim Bailey said "[t]hat pay rate is only for white workers." *Id*. at ¶ 55. Lugo has raised Title VII and § 1981 racial discrimination claims as well as retaliation claims under both statutes.

## A. Discrimination Claims

As an initial matter, Local 538 (as does Titan least in passing)[10] asserts that Lugo's Title VII discrimination claims were dismissed with prejudice by this Court's prior order. However, Local 538 correctly acknowledges those claims were dismissed with prejudice with regard to the first amended complaint because they were "beyond the scope of the original EEOC charge upon which this lawsuit is based." *Lugo v. Int'l Bhd. of Elec. Workers Local #134*, 175 F. Supp. 3d 1026, 1035 (N.D. Ill. 2016). Lugo (perhaps realizing his error) subsequently filed an EEOC charge against Local 538, which was received by the EEOC on August 4, 2015 and Lugo received an EEOC right to sue letter on September 29, 2015. *See* Ex. 4, 9, ECF No. 71. That charge is timely for both of Lugo's allegations, which occurred in October 2014. Furthermore, Lugo filed these letters in a supplemental response on October 9, 2015. *See* ECF No. 69-71. In his submission, Lugo specifically sought leave to file a Second Amended complaint and noted that he wished to file such a complaint in order to "comport with the formalities of the law so as to bring forth his charge and have it be heard." Pl.'s Supp. Resp. at 4-5, ECF No. 71. This filing was made within the 90 days during which Lugo could file a new complaint under those EEOC charges. The Court denied Lugo's motion to file a second amended complaint without prejudice in light of the full-briefed motions to dismiss the first amended complaint, noting that it would

---

[10] *See* Titan Mem. at 2, ECF No. 76.

consider whether it was appropriate to allow Lugo to file a second complaint after those motions had been decided. *See* Order, ECF No. 72. The Court then granted the motions to dismiss the first amended complaint, but allowed Lugo to file a second amended complaint within 30 days, which Lugo did. Under these circumstances, and in light of the Court's duty to construe pro se submissions liberally, the Court considers Lugo to have exhausted his Title VII claims and to have timely filed his claims. Ruling otherwise would require Lugo to file new lawsuits, in the same court, when he already had a pending suit covering those claims, which would likely have been assigned to the same judge. This would be a massive waste of judicial resources and be an undue burden on a pro se plaintiff. Lugo was entitled to decide to combine his newly-authorized suits with his original claims against Local 134 via a second amended complaint, which he attempted to do in a timely fashion and did so in accordance with this Court's rulings.[11]

As discussed above with regard to Local 134, denial of membership in a union on the basis of race violates Title VII and § 1981. Local 538 contends that Lugo has failed to allege a contract as required under § 1981, but union membership is a contract which Lugo alleges Local 538 refused to make on the basis of his race. Although two weeks is certainly a short period of time, whether or not Lugo actually suffered the lost employment opportunities he alleges (or otherwise had damages) is a question of fact to be determined on summary judgment.

---

[11] Because the Court concludes the claims are timely, there is no need to decide whether tolling is appropriate. However, Local 538 acknowledges that the 90 day window to file suit can be tolled for equitable reasons. *See Zipes v. TWA*, 455 U.S. 385, 393 (1982). For example, it can be tolled when the plaintiff has made a good faith error, such a filing suit in the wrong court. *See Jones v. Madison Service Corp.*, 744 F.2d 1309, 1314 (7th Cir. 1984). Local 538 contends such tolling should be inapplicable because Lugo did not file in the wrong court (he never filed a new lawsuit at all). *See* Local 538 Mem. at 4, ECF No. 97. This reads the good faith error provision too narrowly. Lugo *did* make a good faith error – he believed that moving to file an amended complaint would have the same effect as filing a new lawsuit. To the extent that this belief was erroneous, it was understandably so and in good faith. In a meaningful sense, Lugo did file his paperwork in the wrong court, or at least on the wrong docket. Such an error does not warrant the permanent dismissal of his claims.

Local 538's contention that there is no contract under § 1981 is no more persuasive with regard to the second set of facts, the remarks by the job steward and Jim Bailey. Local 538 points out that Lugo has not alleged the existence, much less the terms, of any agreement with the union under which the union undertook a duty to protect him from racial discrimination or racial harassment by union employees. Relying on language from *McKnight v. General Motors Company*, Local 538 argues that a union cannot have committed a violation of § 1981 unless its collective bargaining agreement contains a clause not to discriminate and the union "intentionally avoided asserting discrimination-based claims." *See* Local 538 Mem. at 5; *McKnight v. GMC*, 908 F.2d 104, 112 (7th Cir. 1990). That may be true to the extent that Lugo was alleging the union had failed to adequately represent him in the face of an employer's discrimination. The Seventh Circuit, however, has recently held that "[n]either § 2000e–2(c) nor § 2000e–3(a) makes anything turn on the existence of a statutory or contractual duty violated by the act said to be discriminatory." *Green v. Am. Fed'n of Teachers/Illinois Fed'n of Teachers Local 604*, 740 F.3d 1104, 1105 (7th Cir. 2014). Thus, Lugo does not need to have alleged a violation of a collective bargaining agreement or a failure to assert discrimination claims in order to claim the union discriminated against him in violation of § 1981.

Lugo does not allege a breach of any duty of fair representation by his union. Rather, he appears to allege the union discriminated against him by preventing him from gaining electrical work or being paid at the proper rate. However, these isolated comments do not demonstrate that the union, as an organization, did anything beyond the alleged denial of membership to actually prevent Lugo from gaining employment. (Although the comment from the job steward may be evidence that doing so was the intent of the denial.) Lugo has similarly failed to explain how the union might have manipulated his pay rate while he was employed at, and being paid by,

Skanska. Lugo has alleged that Local 538 and Skanska coordinated to deny him employment "in retaliation for Plaintiff filing his EEOC complaint." Compl. ¶ 55. However, this cannot support any sort of coordinated effort to convince Skanska to fire or underpay him *on account of his race*, although they may serve as evidence that union officials were in fact racially biased during the relevant period. Therefore, the Court denies the motion to dismiss the discrimination claims to the extent those claims concern Local 538's denial of membership.

## B. Retaliation Claims

Lugo also alleges that Local 538 retaliated against him for filing the EEOC complaint against Local 134. (Lugo cannot claim Local 538 was retaliating for the filing of the EEOC charge against Local 538, since that charge was not filed until after the events in question.) Local 538 first contends that Lugo cannot be said to have engaged in protected activity because his charge was against Local 134.[12] However, Lugo has alleged that Local 538 had knowledge of his EEOC charge and the Local 538 job steward referenced Lugo's "race discrimination complaint." Compl. ¶ 40, 54. Lugo has further alleged that Local 134 and Local 538 shared emails and internal documents in which Local 134, Local 538, and Skanska made a "coordinated effort" to prevent Lugo from gaining employment. *Id*. at ¶ 55.

The parties have been unable to locate a case, regarding EEOC exhaustion or protected activity, in which a defendant allegedly retaliated on behalf of a charge filed against a different entity. However, the Court concludes that it is possible to state a claim for retaliation based on protected conduct against a third party. *Thompson v. North American Stainless, LP,* 562 U.S. 170 (2011), is instructive on this matter. There, the Supreme Court held that Title VII provided a

---

[12] Local 538 also alleges Lugo has failed to exhaust his administrative remedies against it. *See* Local 538 Mem. at 7-8. As discussed above, Lugo filed a timely charge against Local 538 following the alleged conduct, so it has by now had the benefit of the EEOC administrative process.

retaliation cause of action when the plaintiff was fired in retaliation for his fiancée filing an EEOC charge. *See id.* at 174-75. The Supreme Court deemed it "obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancé would be fired." *Id*. at 174. The situation here is analogous – Lugo may well have been dissuaded from filing his complaint against Local 134 if he believed that other locals and employers would refuse to employ him on that basis. Thus, the Court finds Lugo has stated a plausible protected activity.[13]

The next question is whether Local 538 took an adverse employment action against Lugo. An adverse employment action is any "employer's action that would dissuade a reasonable worker from participating in protected activity." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty*., 804 F.3d 826, 833 (7th Cir.2015) (internal quotation marks omitted). Lugo has alleged that the denial of his union membership was in part due to retaliation.[14] Compl. ¶ 37. Originally the Court denied Lugo's retaliation claim because the one year gap between the charge and the denial was too great for timing alone to account for the Local's action. *Lugo*, 175 F. Supp. 3d at 1039. Lugo, however, has now provided contemporaneous (with the denial of membership) statements in the form of the job steward's statement that he would "never get a job there after filing a race discrimination complaint." Compl. ¶ 54. He has further alleged that Local 134 and Local 538 exchanged emails to coordinate an effort to have him fired in retaliation for

_____

[13] Additional support for this proposition may be found in cases holding that discrimination based on the race or national origin of a person's spouse or partner falls within the protections of Title VII. Although the Seventh Circuit has not decided that question, it has noted that the other circuits that have addressed it have concluded that an employer may violate Title VII if it takes action against an employee because of the employee's association with a person of another race. See *Cortezano v. Salin Bank & Trust Co.*, 680 F.3d 936, 939 (7th Cir. 2012) (collecting cases).

[14] Lugo alleges that this denial was due both to racial discrimination and retaliation. Either, or both, plausibly could be the cause.

his EEOC complaint. *Id.* at ¶ 55. The Court finds these allegations clear the bar (albeit again with little room to spare) of connecting Lugo's EEOC charge against Local 134 to the alleged denial of membership.

### III. Titan

Lugo brings both racial discrimination and retaliation claims under both Title VII and § 1981 against Titan. Titan argues that Lugo has failed to state a plausible claim for either, because he has not alleged anything related to his race and because Lugo has failed to allege sufficiently specific facts for his retaliation claim. For the reasons discussed below, the racial discrimination claims are dismissed but the retaliation claims survive.

### A. Discrimination Claims[15]

In order for his claims to survive a motion to dismiss, Lugo must allege both an adverse employment action and that it was a result of his race. *See Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013). Lugo alleges he was terminated by Titan on December 24, 2014 as a result of a "one-man layoff, reduction in force." Compl. ¶ 57. Lugo also alleges that Titan's Project Manager, Ken Kovach, said on December 15, 2014, "So [Lugo] is the one that filed with EEOC, can't believe he would do that to his own union. Somebody needs to call immigration on him." *Id.* Titan argues that this comment's reference to "immigration" is insufficient to support a race discrimination claim where the Seventh Circuit has already held that Title VII does not protect against "discrimination based on citizenship or immigration status." *Cortezano v. Salin Bank & Trust Co.*, 680 F.3d 936, 940 (7th Cir. 2012). References to "immigration," however, could also be coded references to race rather than genuine discussions of immigration status,

---

[15] In its reply, Titan argues the discrimination claims were dismissed with prejudice from this suit by the Court's prior order. That argument is incorrect for the reasons given with regard to Local 538. *See* Part II.A.

especially in the context of Hispanic employees. *See Rodriguez v. Host Int'l, Inc.*, No. 12 C 3705, 2013 WL 6134969, at *5 (N.D. Ill. Nov. 20, 2013) (concluding that "telling Hispanic employees to go back to their home countries and threatening to call immigration" contributed to a hostile work environment).

Nevertheless, Lugo's racial discrimination claims fail for a more basic reason – he has never alleged he was actually terminated by Titan on the basis of his race. Instead, Kovach's statement explicitly mentions immigration *as a method of retaliating for the EEOC complaint*. Lugo's later allegations state that "Defendant Titan through its agent Kovach retaliated against Plaintiff for the filing of his EEOC Complaint." Compl. ¶ 58. Lugo goes on to allege a "coordinated effort to thwart [Lugo's] employment opportunities in retaliation" for the EEOC complaint. *Id*. at ¶ 59. Thus, Lugo has never specifically alleged that Titan took this action on the basis of his race. Rather, Titan plainly (if the allegations are true) did so on the basis of retaliation. Therefore, Titan's motion to dismiss is granted at to the Title VII and § 1981 racial discrimination claims.

### B. Retaliation Claims

As to the retaliation claims, Titan argues that the facts alleged in Lugo's complaint (Kovach's conversation, as well as the communication between Kovach and Local 134 in which Titan was made aware of the EEOC charge) are not entitled to the presumption of truth because they are "devoid of a sufficient factual basis." Titan Mot. at 12, ECF No. 75. Titan references *Yeftich v. Navistar, Inc.*, 722 F.3d 911 (7th Cir. 2013), where the Seventh Circuit found the plaintiff had failed to state a plausible claim where it alleged "intentional, willful, wanton, and malicious" conduct without suggesting a motive for the defendant's actions. *Id*. at 916. Lugo has provided more specific facts than in *Yeftich*: that on a specific date, a specific employee said

specific things, having been informed in the 10 days prior about Lugo's specific EEOC complaint. Titan goes on to seemingly argue that Lugo's allegations are not entitled to the presumption of truth because "Plaintiff does not allege that he was a participant or even present for the conversation." Titan Mot. at 12. However, a Plaintiff may rely on information and belief or hearsay within his complaint at the motion to dismiss stage. *See Lewis v. City of Chicago*, No. 14 C 7317, 2016 WL 3752974, at *2 (N.D. Ill. July 13, 2016); *Widmar v. Sun Chem. Corp.,* No. 11 C 1818, 2012 WL 1378657, at *7 (N.D. Ill. Apr. 19, 2012). In fact, the Seventh Circuit has allowed second-hand remarks to constitute the basis for Title VII claims in the context of a hostile work environment. *See Dandy v. UPS*, 388 F.3d 263, 272 (7th Cir. 2004). Admissible evidence, supported by personal knowledge, is not necessary to prove the existence of these conversations until summary judgment. *See Motise v. Parrish*, 297 F. App'x 149, 153 (3d Cir. 2008) ("conclusory statements, general denials and factual allegations not based on personal knowledge are insufficient to avoid summary judgment").

Furthermore, Lugo has now cured the causation problem of his first complaint, which originally relied on timing alone between the filing of his EEOC charge against Local 134 and his subsequent firing 11 months later. Now, Lugo has alleged facts that, if true, would plausibly explain why Titan hired him after the EEOC charge but then fired him for it – Titan did not become aware of the EEOC charge until Local 134 told Kovach about it after Lugo was hired. *See* Compl. ¶ 58. This allegation, combined with Kovach's alleged remark about his EEOC complaint, is sufficient to suggest a causal connection at the motion to dismiss stage. Therefore, the motion to dismiss is denied as to the retaliation claims.

## IV. Stephenson

The Title VII claims against Lonnie Stephenson were dismissed with prejudice by this Court's prior order because individuals are not liable under Title VII. *See Lugo*, 175 F. Supp. 3d at 1033. To the extent that Lugo's complaint attempts to reassert Title VII claims against Stephenson, the motion to dismiss is granted again.

Stephenson's involvement, as alleged in the complaint, remains minimal – only that he was informed via email about harassment and terminations at Skanska and Titan and failed to act. Compl. ¶ 42, 59. Stephenson raises numerous problems with Lugo's allegation that this minimal inaction subjects him to individual liability. The Seventh Circuit has held that "inaction, unless invidious, is not discrimination in any accepted sense of the term." *EEOC v. Pipefitters Ass'n Local Union 597*, 334 F.3d 656, 660 (7th Cir. 2003). Nowhere has Lugo alleged that Stephenson acted with any racist or retaliatory intention.[16] Thus, Stephenson could not have violated Lugo's rights under § 1981.

In addition to the lack of causation between Lugo's race and/or protected activity, Lugo's claims against Stephenson fail because the overarching IBEW organization, of which Stephenson is an employee, is not the same as the union locals alleged to have discriminated and retaliated here. Lugo does not allege he ever went beyond the locals and asked the international organization for help. Although Lugo cites a Sixth Circuit decision finding a national union organization can, when there is an agency relationship, be liable for failing to "oppose the local's

---

[16] The closest Lugo comes is the conclusory omnibus allegation that all the defendants "acting with full knowledge of Plaintiffs [sic] complained of disparate treatment of minorities by Defendant, subsequently intentionally denied Plaintiffs union application, employment, and/or changed or manipulated his legitimate credential as a Journeyman Electrician in a discriminatory manner on the basis of Plaintiff's race." Compl. ¶ 62. Even if this allegation were not conclusory, none of the listed actions are actions taken by Stephenson, so the racial motivation would still not be imputed to Stephenson.

discriminatory conduct," it is not clear this would extend to a duty for an individual employee of the national union to oppose the discrimination. *See Alexander v. Local 496, Laborers' Int'l Union*, 177 F.3d 394, 409 (6th Cir. 1999). Furthermore, before reaching that point, Lugo must "sufficiently allege that an agency relationship existed" between Stephenson and the Locals. *Cumis Ins. Soc'y v. Peters*, 983 F. Supp. 787, 796 (N.D. Ill. 1997). Here, Lugo has not alleged any facts concerning the relationship between Stephenson and the locals or between the locals and the international IBEW. Therefore, the § 1981 claims are dismissed with prejudice.

*   *   *

In sum, all claims against Lonnie Stephenson are dismissed with prejudice for failure to state a claim. All discrimination claims against Titan are dismissed with prejudice, although the retaliation claims remain. All the claims against Local 134 and Local 538 remain.

Dated: March 28, 2017

John J. Tharp, Jr.
United States District Judge